UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE ROMAIN,

        Plaintiff,                       CIVIL ACTION NO. 11-15679

      v.                                DISTRICT JUDGE AVERN COHN

ST. JOSEPH MERCY HOSPITAL,     MAGISTRATE JUDGE MARK A. RANDON

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 18)**

**I. INTRODUCTION**

     This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. *Pro se* Plaintiff, Nicole Romain, alleges she was harassed, discriminated against and ultimately terminated by employees of St. Joseph Mercy Hospital ("Defendant") because she is a woman. Judge Avern Cohn referred all pretrial matters to this Magistrate Judge (Dkt. 10).

     Defendant's motion for summary judgment is pending (Dkt. 18). Plaintiff served a "motion for summary judgment" on Defendant, but did not file it with the Court.[1] Defendant attached Plaintiff's motion to its sur-reply brief (Dkt. 24; Ex. 1); oral argument was heard on December 6, 2012.

---

[1] Plaintiff's "motion" is actually a response to Defendant's motion for summary judgment.

For the reasons discussed below, this Magistrate Judge **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiff's claims relating to her termination should be dismissed with prejudice; however, Plaintiff should be permitted leave to amend her Complaint to attempt to state an independent claim of sex discrimination or harassment arising from the "uniform incident."

## II.  BACKGROUND

Plaintiff began her employment with Defendant on or about September 26, 2005 as a security officer (Dkt. 18; Ex. A, Employment Offer). Plaintiff's duties as a security officer included:

> 1. Monitor[ing] conditions and activities while patrolling the grounds, parking lots and buildings. Ensur[ing] that relevant Health Center policies are followed and violations are reported [and]
> * * *
> 3. respond[ing] appropriately to a variety of potential and/or real emergencies, alarms and extraordinary events.

(Dkt. 18-3, Security Officer Position Description). Defendant has not offered any evidence that Plaintiff had a noteworthy disciplinary record before 2010.

**A. The New Uniform**[2]

It appears that in early 2010, Defendant changed the uniform worn by its security officers. Plaintiff says the new uniform was a "men's uniform"(Dkt. 24, Ex. A, p. 7): the pants were straight-legged and could not fit a woman, like herself, with a female shape and curves. Plaintiff says she "was refused a women's uniform" and "forced into a man [sic] uniform that

---

[2] Plaintiff's submissions provide few facts. The facts related to the new uniform are pieced together from pages 7-12 of Plaintiff's motion for summary judgment (attached to Defendant's sur-reply brief) and the audio-recording of the December 6, 2012 motion hearing.

didn't fit" (*Id.* at p. 10).  On April 1, 2010, Plaintiff told her supervisor, Paul Adams, that she could not fit into the pants to the new uniform.  Adams became very hostile and repeatedly told her to "make it work" (*Id.* at p. 8).  He suspended Plaintiff without pay for two weeks, presumably for not showing up to work in the pants to the new uniform (*Id.*).

On April 4, 2010, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") about the uniform incident.  A month later, Plaintiff attended a meeting with Adams and a Human Resources representative to discuss the matter.  According to Plaintiff, Adams "got belligerent during meeting [sic] and yelled, [sic] also hostile and left meeting" (*Id.* at p. 8).  Plaintiff says "she was forced to endure harassment from Paul Adams following [her] EEOC complaint" (*Id*. at p. 10).  She contends the uniform incident precipitated a wide-ranging effort to retaliate against her, culminating in her discharge.  In her own words from the motion hearing: "it's all over a uniform; its always been about a uniform."

**B.  Plaintiff's Final Written Warning and Termination**

Beginning in April of 2010, Defendant claims that Plaintiff frequently exhibited unprofessional behavior, and ignored or delayed responding to calls for assistance or back-up (Dkt. 18; Ex. B, Malvitz Dec., ¶ 3).  Between April 2010 and August 2010, Defendant says Plaintiff failed to promptly respond to several security situations at the hospital (Dkt. 18; Exs. F-L).  When questioned about her slow response times, Plaintiff claimed that her assigned area was too large (Dkt. 18; Ex. G, Adams Notes; Ex. M, Performance Evaluation).  Plaintiff was assigned to a new area of the hospital, however, Defendant claims Plaintiff's slow response times continued (Dkt. 18; Ex. M).

### *1. Plaintiff failed to respond to a panic alarm*

In September 2010, Defendant received a complaint that Plaintiff had failed to respond to a panic alarm. According to Defendant, another security officer reported that Plaintiff was chatting with a co-worker when she was dispatched to respond to a panic alarm triggered in the OR waiting room (Dkt. 18; Ex. B, Malvitz Dec., ¶ 5-7). Plaintiff acknowledged the call, but instead of immediately responding to it, continued to chat her co-worker. After watching Plaintiff take no action for 1 ½ - 2 minutes, a third security officer, Terry Foley, took the call for Plaintiff (*Id.*).

After conducting an investigation, which included meeting with Plaintiff, Security Officer Foley and the two other employees who witnessed the incident, Alrene Malvitz (Defendant's HR Consultant) and Terry Donahue (Defendant's Security Department Manager) determined that Plaintiff should be disciplined (Dkt. 18; Ex. B, Malvitz Dec., ¶ 5-7). Adams played no role in the investigation or the decision to discipline Plaintiff. Rather, Malvitz and Donahue concluded that Plaintiff had created "a dangerous work environment for staff," a serious infraction – warranting a final written warning (not a first or second written warning) – and issued her a corrective action on September 30, 2010 (Dkt. 18; Ex. B, Malvitz Dec., ¶ 7; Ex. C, 9/30/10 CAR).

Plaintiff appealed the final written warning through Defendant's internal appeal process (Dkt. 18; Ex. O, IAP Form and 10/6/10 Notes). Pam Misener (Defendant's Director of Support Services – Donahue's supervisor) conducted an independent investigation, re-interviewed Plaintiff and other security personnel, and ultimately decided to uphold the corrective action (Dkt. 18; Ex. P, 10/29/10 Notes; Ex. Q, 11/2/10 LT). Under Defendant's progressive discipline

policy, Plaintiff's final written warning would be active for one year – until September 30, 2011 (Dkt. 18; Ex. B, Malvitz Dec., ¶ 2). If Plaintiff engaged in any misconduct during that one-year period, her employment would be terminated pursuant to the last step of progressive discipline. *Id.*

### 2. *Plaintiff acted unprofessionally at an accident scene*

On February 24, 2011, Plaintiff was dispatched to the scene of an accident involving a pedestrian and a vehicle in the hospital parking lot (Dkt. 18; Ex. B, Malvitz Dec., ¶ 8). Witnesses to the incident reported that Plaintiff exhibited unprofessional and inappropriate behavior when responding to the accident scene (Dkt. 18; Ex. B ¶¶ 8-9). Specifically, it was reported that Plaintiff acted very aggressively, berated a hospital employee for placing the accident victim in a wheelchair and moving her into the hospital and yelled at a passenger in the car (also a hospital employee) involved in the accident (Dkt. 18; Ex. B, ¶ 8). All told, three witnesses said Plaintiff engaged in unprofessional and inappropriate behavior (Dkt. 18; Ex. B, Malvitz Dec., ¶ 8).

After receiving these reports, Misener and Malvitz determined that corrective action was warranted. *Id.* Again, Adams was not present at the scene or involved in the decision to take additional corrective action against Plaintiff.

Because Plaintiff's final written warning was still active under the progressive discipline policy, the next step was termination (Dkt. 18; Ex. C, 9/30/10 CAR). Accordingly, on March 2, 2011, Defendant terminated Plaintiff's employment (Dkt. 18; Ex. B, Malvitz Dec., ¶ 9; Ex. D, Termination of Employment).

### III. ANALYSIS

#### A. Standard of Review

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252.

The fact that Plaintiff is *pro se* does not lessen her obligation under Rule 56. The Sixth Circuit has made clear that, when opposing summary judgment a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x. 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"; although the plaintiff had made relevant factual allegations, he "did not file an affidavit to this effect nor did he sign any pleading under penalty of perjury"); *Johnson v. Stewart*, No. 08–1521, 2010 U.S.App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) ("The liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage" (citations omitted)).

### B. Title VII Sex Discrimination

Under Title VII, it is unlawful for an employer "to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a case of discrimination by direct evidence or by circumstantial evidence that creates an inference of discrimination.[3] *See DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). When a claim is based on circumstantial evidence, courts apply the three-step burden shifting approach from *McDonnell Douglas*.[4] *McClain v. North West Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006). The plaintiff must first establish a prima facie case by a preponderance of the evidence. *See Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981).

---

[3] "'[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Amini v. Oberlin Coll.,* 440 F.3d 350, 359 (6th Cir. 2006) (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005)).

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must prove, by a preponderance of the evidence, that: "1) she is a member of a protected group; 2) she was subjected to an adverse employment decision; 3) she was qualified for the position; and 4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably than she was." *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004); accord. *McClain*, 440 F.3d at 332.

If a plaintiff sustains the burden of establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries this burden, the burden returns to the plaintiff to show that the defendant's reasons were not its true reasons, but were a pretext for discrimination. *Id.* at 253; *McClain*, 440 F.3d at 332.

Under the hostile work environment theory, in order to survive summary judgment, plaintiff must establish that: (1) she is a member of a protected class; (2) she was subjected to harassment, either through words or actions, based on sex; (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile or offensive work environment; and (4) there exists some basis for liability on the part of the employer. *See Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008), citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996). Moreover, "[t]he harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to a reasonable person and the actual victim.'" *Id.*, quoting *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006). Factors to consider in determining whether a hostile work environment actually exists include,

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*, quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (emphasis omitted). In addition, "courts must determine whether the 'workplace is permeated with discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Id.* at 678–679, quoting *Harris*, at 21 (internal citations omitted).

### C. Plaintiff Has Not Shown That Her Termination Was Due To Discrimination

Plaintiff's response to Defendant's motion for summary judgment fails to establish a prima facie case of sex discrimination – at least as it relates to her termination. Plaintiff fails to provide any evidence that a similarly situated male employee received more favorable treatment or that she was replaced by a male. Although Plaintiff does claim that she was "treated less fairly than male security officers" (*Id.* at 4), she does not point to any evidence that this was so.

To the contrary, Defendant's motion for summary judgment – and the exhibits attached thereto – demonstrate that Defendant followed its HR policies when terminating Plaintiff's employment for poor and unprofessional performance. There is simply no evidence that Plaintiff's termination was in any way related to her sex or that male security guards were not terminated for engaging in similar misconduct.

During oral argument, Plaintiff attempted to connect her termination to the earlier incident involving Adams and the uniform. No such connection exists. The two unrelated incidents resulting in Plaintiff's termination were independently investigated by individuals above Adams in the managerial chain of command. Adams played no role in the decision to

impose discipline, or the severity of discipline Plaintiff received.  Therefore, even if Adams threatened retaliation against Plaintiff, the investigation by his superiors breaks any causal link. *Roberts v. Principi*, 283 F. App'x 325, 333 (6th Cir. 2008) ("[W]hen a decisionmaker makes a decision based on an independent investigation, any causal link between the subordinate's retaliatory animosity and the adverse action is severed.")  As such, Defendant is entitled to summary judgment on Plaintiff's claim that she was terminated due to gender bias.

### D.  Plaintiff May Have An Independent Claim For Sex Discrimination or Harassment

Dismissal of Plaintiff's termination claim does not, however, end the inquiry.  In Plaintiff's response to Defendant's motion for summary judgment – and during oral argument in this matter – Plaintiff claims that Adams forced her to wear a men's uniform (which did not fit her).  The Court cannot determine on this record whether these allegations would suffice to give rise to an independent claim of discrimination or harassment.  However, Plaintiff should be given leave to amend, to attempt to state this claim, after which Plaintiff should be afforded a brief period of discovery.  Plaintiff's failure file an amended complaint by a date certain, should result in a dismissal of her lawsuit with prejudice.  As such, at this time, it is recommended that Defendant's motion for summary judgment be denied as to any discrimination or harassment claim Plaintiff may have related to the uniform incident.[5]

### IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  If the Court adopts this

---

[5] This does not mean that Plaintiff will necessarily be able to sustain such a claim or that it too will not be subject to summary judgment at a later date.

recommendation, Plaintiff should be permitted a reasonable amount of time to file an amended complaint, to allege claims relating to her being sent home from work, due to her refusal to wear a men's uniform and any related harassment.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

                                      s/Mark A. Randon
                                      MARK A. RANDON
                                      UNITED STATES MAGISTRATE JUDGE

Dated: June 28, 2012

### *Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 18, 2013, by electronic and/or first class U.S. mail.*

> *s/Eddrey O. Butts*
> *(Substitute)*
> *Case Manager to Magistrate Judge Mark A. Randon*
> *(313) 234-5201*